STATE OF IOWA, Appellee, v. CHARLES F. CHRISTENSON, Appellant.

**HOMICIDE:** Murder—Evidence. Evidence held to amply sustain a
1   verdict of murder in the second degree.

**HOMICIDE:** Evidence—Other Offense Not Connected With Accused.
2   Testimony tending to show the commission of an assault on the deceased, and received on the unfulfilled promise that the accused will be connected therewith, will not constitute reversible error, (1) when no motion is made to exclude it, and (2) when said testimony has material bearing on other issues in the cause.

**CRIMINAL LAW:** Trial—Improper Opening Statement. The act of the
3   court in sustaining, in the presence of the jury, objections to portions of a noninflammatory opening statement by the public prosecutor, must be held to efface the error in the original making of the statements.

**CRIMINAL LAW:** Trial—Harmless Error. An erroneous statement by
4   the county attorney as to what a witness had testified to is harmless when other portions of the record demonstrate that the essential fact in controversy was as contended by the county attorney.

*Appeal from Woodbury District Court.*—C. C. HAMILTON, Judge.

FEBRUARY 14, 1922.

THE defendant was indicted for murder in the first degree. A verdict was rendered, finding him guilty of murder in the second degree. Upon this verdict, a life sentence in the penitentiary was imposed upon him by the court. He has appealed. —*Affirmed.*

*George G. Yeaman,* for appellant.

*Ben J. Gibson,* Attorney General, and *John Fletcher,* Assistant Attorney General, for appellee.

EVANS, J.—On January 15, 1921, the defendant's wife, while seeking asylum in her mother's home, was shot to death. The fatal bullet penetrated her heart, and she lived but a few moments thereafter. Upon a post-mortem examination by the coroner, the bullet was discovered, and was taken from the body and was introduced in evidence at the trial. It was a .38 caliber, and came from a .38 gun, held in the hands of the defendant. The married life of the defendant and his wife had not been harmonious. The emphasis of the defense made by the defendant was that the shot that killed his wife was not intended for her, but that the same was intended for Percy, her stepfather, and was delivered in self-defense. The errors assigned as grounds of reversal may be classified under three general heads:

1. HOMICIDE: murder: evidence.

(1)  That the evidence was insufficient to sustain the verdict of guilty.

(2)  Certain erroneous rulings in the admission of evidence.

(3)  Misconduct of the county attorney in his opening statement and in his closing argument to the jury.

I.  Was the evidence sufficient to sustain the conviction? The married life of these people had been tempestuous. They had been married but a few years. They had been once divorced from each other, and had remarried. The remarriage was comparatively recent. On one or two occasions thereafter, the wife had fled from her home, under claim, at least, of fear. On Thursday evening, January 13th, she came to the home of her mother, Mrs. Percy. In the meantime, she had lodged a complaint against her husband with the police. This, however, was informal and oral. Later in the evening, the defendant

appeared at the door of the Percy home, and was not admitted. He conversed with Mrs. Percy, while he was on the outside and she on the inside of the house. The door was not opened to him. In the conversation with Mrs. Percy, she ordered him away, under threat of calling the police. He left his place at the door, uttering defiance of the police. One half or three quarters of an hour later, a "rock" was thrown through the window, apparently aimed at Mrs. Christenson, who was at that time occupying a rocking chair in the near vicinity of the window. The rock struck the back of her chair, within 6 or 8 inches of her head. Early Saturday morning, a complaint was lodged against the defendant with the county attorney by the wife and her father. Later in the forenoon, he called his wife by telephone, and had a short conference with her at the phone. A few minutes before noon of the same day, he came to the Percy home and entered it at the back door, without permission and without knocking. At the very moment of his opening the door, Mrs. Christenson and her sister, Miss Comstock, were at the door, being about to depart from the house. Upon this sudden meeting with the defendant, both the women started in flight into other portions of the house, the sister running upstairs, and Mrs. Christenson toward another room downstairs. The defendant held a revolver as he entered, and said to his wife, "You will not get away this time." Previous to this, the defendant had several times threatened to kill his wife unless she would return to him. The screams of the women brought Percy from another room to the scene. He either threw or knocked the defendant to his knees, and attempted to get the revolver away from him. Failing in this, he hastened to get his own revolver from the pantry. Before he had accomplished this, the first shot had been fired by the defendant, which resulted in the immediate death of his wife. A duel ensued between the defendant and Percy, wherein both were severely wounded. A total of five shots had been discharged by the defendant, and three by Percy. Before starting for the Percy home that forenoon, the defendant had borrowed the revolver from his son by a former marriage, and had gone to his son's home for that purpose. On the way to the borrowing, he had purchased cartridges appropriate for use in the son's revolver.

These are the salient facts as they appear in the evidence for the State. Defendant was a witness in his own behalf. He testified to the borrowing of the revolver and the purchase of the cartridges. He denied that he had any intention, to shoot his wife. He admitted the duel between him and Percy. He admitted that his gun was a .38 caliber. He testified that he went to the Percy home that day upon the invitation of his wife, over the phone. The theory advanced for him at this point is that a trap was set for him, and that he had been induced to come to the home in order that Percy might attack him. He testified that Percy did attack him immediately, and that Percy fired the first shot, and that he himself fired only in self-defense, directing his fire at Percy alone.

The instructions of the court gave to the defendant the full benefit of his theory of self-defense. No complaint is made of any instruction. The jury was amply justified in finding the facts substantially as they were given by the State's witnesses. The evidence for the State was abundant to sustain the verdict. It was not only sufficient as a matter of law, but was very persuasive as a matter of fact. There was no error in the refusal of the court to direct a verdict for the defendant.

II. The alleged error in the admission of evidence has reference chiefly to one item. The State introduced evidence concerning the circumstance of the "rock" that came through the window and struck the chair of Mrs. Chris-

2. HOMICIDE: evidence: other offense not connected with accused.

tenson. The defendant made appropriate objection to each question which was calculated to produce evidence of this circumstance, and the objections were overruled. These rulings are now complained of. We find in the record two quite conclusive reasons why this assignment cannot be sustained:

(1)   The theory advanced by the defendant that the Percys had induced the defendant to come to the home in order that they might carry out their plan to attack him with a revolver, loaded and conveniently placed for that purpose, challenged them to an explanation of why they had the revolver so ready for use. The episode of Thursday night was the explanation. The defendant drew this fact out on cross-examination, although it is also true that it was brought out as a part of the State's

main case. If it were eliminated from the latter, it would still be in the record as a part of the cross-examination.

(2) The evidence of the circumstance was admitted in the first instance by the court upon a statement by the county attorney that he would connect the circumstance with the defendant. The court stated that it would receive the evidence, subject to its being stricken later, if the State failed to connect it. There was no error, therefore, thus far. The only evidence produced by the State to connect the defendant therewith was the threats made by the defendant that he would kill his wife if she did not return to him; the fact that she had refused on that Thursday night to confer with him at all; and the fact that the defendant had been peremptorily ordered away by Mrs. Percy, and that he had left, uttering defiance. Whether these facts sufficiently connected the defendant with the assault that night we need not determine, because no further attention was paid by the defendant to the ruling of the court, and no motion or request was made that the evidence be stricken on the ground that it had not been properly connected with the defendant.

III. Misconduct is charged against the county attorney. In his opening statement to the jury, the county attorney purported to state the substance of the evidence which the State would produce. The defendant objected diligently to certain purported evidence, as being incompetent and inadmissible. Several of these objections were formally sustained by the court. The complaint is that this was not a sufficient ruling, in that the statement of the county attorney still remained in the record, and had been heard by the jury. That is always true when objection is made after the evidence or statement has gone in. The court did admonish the county attorney as to what he could show and what he could not, and did sustain the defendant's objections in several instances. All this was done in the presence of the jury. We think a ruling in such form was at least *prima facie* sufficient. The purported evidence complained of was close to the line. There was nothing peculiarly prejudicial or inflammatory about it. There was nothing in the nature of such evidence or in the circumstances of the utterance by the county

3. CRIMINAL LAW: trial: improper opening statement.

attorney that impeached his good faith. Matters of this kind occurring in the course of a trial are peculiarly within the control of the trial court. It has a large discretion therein, with which we will not lightly interfere. No ground for our interference is presented here.

Another ground of misconduct of the county attorney is directed at the closing argument, and at certain statements made by the county attorney concerning the evidence of Dr. Robbins, the coroner. The county attorney said:

4. CRIMINAL LAW: trial: harmless error.

"Dr. Robbins says it was a .38 caliber bullet, turned over to Mr. Danielson, who has kept it in his possession ever since, until it was produced in court yesterday; and that will go with you to your jury room for your examination. So it is a .38-caliber bullet that ended her life.''

Defendant's counsel objected to this statement as follows:

"Dr. Robbins didn't say it was a .38-caliber bullet. He said he didn't know what caliber it was. He wasn't experienced in that line. It is a question of fact, your Honor.''

"The Court: The jury have heard what the doctor testified to.''

The county attorney was in error at this point in his statement of the testimony. Dr. Robbins did testify, as contended by defendant's counsel, that he didn't know the gauge, and was not experienced in that subject. It did appear from his testimony that he got a very imperfect view of the bullet, because it was covered with blood.

In the light of the whole record, however, such mistaken statement by the county attorney was quite harmless and immaterial. The testimony is undisputed that the bullet taken from the body of Mrs. Christenson was a .38 caliber. Dr. Robbins testified that he gave the bullet to the chief of police, Danielson. Danielson produced the bullet received by him from Robbins. This was the bullet introduced in evidence. It was also admitted of record that the defendant's revolver was a .38 and that Percy's revolver was a .32. Clearly, therefore, the defendant suffered no prejudice here. Another statement by the county attorney pertaining to the evidence of Robbins was challenged by defendant's counsel. The statement of the county attorney in that instance was substantially correct. If it were

not, we would not review here the mere accuracy of the attorneys in the statement of the evidence which the jury had heard. Such inaccuracies are not misconduct, in a legal sense.

We have given the record herein a very careful consideration, owing to the gravity of the charge and of the consequences to the defendant. We are convinced from the record that his trial was eminently fair, and that his guilt was fully established, within the contemplation of the law. The judgment is, accordingly,—*Affirmed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.