STATE OF IOWA, appellee, v. ISAM McCLAIN, appellant.

No. 51016.

(Reported in 125 N.W.2d 764)

JANUARY 14, 1964.

REHEARING DENIED MARCH 10, 1964.

C. A. Frerichs and Joe Nutting, both of Waterloo, for appellant.

Evan Hultman, Attorney General, John H. Allen, Assistant Attorney General, both of Des Moines, William C. Ball, County Attorney, and John Beekman, Assistant County Attorney, both of Waterloo, all for appellee.

SNELL, J.—The Grand Jury of Black Hawk County returned an indictment charging defendant, Isam McClain, with the crime of murder. He was accused of burning his wife. He pleaded not guilty, was tried before judge and jury, found guilty of murder in the second degree, and thereafter sentenced pursuant to statute. On appeal he alleges procedural errors, and violation of his rights to due process and fair trial.

The sufficiency of the evidence, if properly received, to sustain a conviction is not challenged.

The evidence was extensive but we will set out only such parts thereof as may be germane to the alleged errors.

Between 3 and 4 a.m. on August 19, 1962, defendant returned home from a night of carousing. Shortly after he arrived home he had an argument with his wife. Such an argument was nothing new. About a month prior thereto his wife stuck defendant twice with a pitchfork because he was running around with other women. Defendant admitted hitting his wife twice and that she fell across the bed. He testified that he then went to the kitchen and ate two sandwiches. He said that he then went to the bedroom, discovered a fire, attempted to put it out and throw out what was burning. This included a mattress that he dropped at the front door. According to defendant he stood in the front yard and said "If she set the God damn place afire, let the God damn place burn." He testified that he then spent several hours wandering around town looking for his wife, stopping at a friend's house to play a record, calling his employer for an advance on his wages and visiting various clubs. He learned that the police were looking for him and identified himself to a detective.

Mr. and Mrs. William Crumbaugh lived next door to defendant's house. About 4 a. m. on August 19, 1962, they were wakened by "hollering." They looked out the window. They saw the fire next door. Mr. Crumbaugh saw defendant in the

yard and heard him utter an obscenity. Mrs. Crumbaugh saw defendant throw water on the fire. That is all either of them saw of defendant.

Defendant's wife came to the Crumbaugh house. She was badly burned. She asked Mr. Crumbaugh "to call the law." He refused. Defendant's wife was in the Crumbaugh house about six minutes. She then went out and sat on the steps. Mr. Crumbaugh said he did not see the woman's injuries because the house lights were not turned on. While defendant's wife was on the steps Mr. Crumbaugh heard her say " 'Don't touch me under here, I am burned up.' " Mrs. Crumbaugh heard her say " 'Mac poured gas on me and burned me up.' "

The burned woman was taken to the hospital in a fire department ambulance.

One of the places visited by defendant shortly before the fire was Allie B's. After defendant left, two of defendant's associates, Berkley Randolph and Allie B. Anding, left. They saw and went to the fire at defendant's house. Each saw defendant's wife on Crumbaugh's steps, observed that she was horribly burned and heard her say that McClain (defendant) poured gas on her and set it on fire. Mrs. Anding rode in the ambulance with the burned woman and was with her in the hospital for some time. Mrs. Anding testified that defendant's wife kept hollering that "Mac poured the gas on her and set her afire." The same accusing statements by defendant's wife were heard by several witnesses.

Defendant's wife died thirteen days later at the hospital from the burns and complications. A pathologist, who performed an autopsy, testified as to the cause of death, including his opinion that there was neglect, inadequate and improper medical attention at the hospital.

E. J. Polk, a witness for the State, testified concerning conversations with defendant during the evening of August 18 and again between 6 and 8 a.m. the next morning. According to this witness defendant in the evening said he was going to kill his wife. The testimony as to the morning conversation was as follows:

"Q. Who started talking? A. McClain.

"Q. What did he say, Joe? A. He said, 'Man, I killed my wife.'

"Q. He said, 'Man, I killed my wife?' A. That's right.

"Q. What did you say? A. I said, 'You crazy', that's what I said.

"Q. What happened then? A. So he went on to tell me how he did it. He said he run her up under the bed and he poured gas on her.

"Q. He said he poured gas on her? A. That's right.

"Q. And what happened then? A. He said he set fire to her.

"Q. What did you say? A. He said that every time she started out from under the bed, he said he start to hit her over the head with a hammer and run her back under there, and I laughed at him."

Two witnesses testified to a conversation in the morning of August 19 between one Gilmore and defendant. Gilmore said "McClain, do you know you burned your wife up?" Defendant answered, " 'I did? Let the bitch burn. I burn the whole world up.' "

Investigating authorities made an extensive search of the McClain premises and the nearby area for evidence of gasoline. They found no indication that gasoline was used.

Fire department officials secured the clothes the deceased was wearing at the time of the burning. Several people attempted to smell gas on the clothes to no avail.

A test recommended by the State Fire Marshal was conducted on the clothes. The results of these tests were negative. State and defense experts testified that this was an accurate test. The clothes, after careful preservation, were sent to the Federal Bureau of Investigation. It reported it could find no traces of combustible materials. The F. B. I. report was objected to by the State and was not allowed to go to the jury.

I. Section 769.18, Code of Iowa, provides procedure under which witnesses may be subpoenaed for examination by the county attorney. This is part of the investigative procedure

incident to the filing of an information by a county attorney. See article on The Trial Information In Iowa, Volume XIII, Iowa Law Review 264. Pursuant to this statute and before the death of defendant's wife, four witnesses were subpoenaed for examination by the county attorney. This procedure was subsequently vigorously attacked by defendant who demanded by motion the right to cross-examine. Before a ruling on this motion defendant's wife died. The court overruled defendant's motion and ordered the case submitted to the grand jury.

Three of the witnesses previously questioned by the county attorney testified before the grand jury and the minutes of their testimony were attached to the indictment. The substance of the testimony of the fourth witness (it was of little if any importance) was filed a few days later.

Defendant claims error in refusing him the right to cross-examine the State's witnesses before trial and to take discovery depositions.

█ We have recently held that civil rules of discovery are not a part of our criminal procedure. State v. District Court, 253 Iowa 903, 114 N.W.2d 317.

█ In Iowa a defendant in a criminal case is protected far beyond the scope of discovery depositions without resort thereto. In the instant case defendant had the aid of competent and energetic counsel substantially compensated at public expense. Counsel's fee bill shows that over 103 hours were spent interviewing witnesses other than defendant. Evidentiary possibilities were apparently thoroughly explored. Regular depositions could have been taken pursuant to section 781.10. Before trial defendant had the names of the State's witnesses and the substance of their testimony. If defendant's information as to the substance of the State's evidence was inadequate a motion for a bill of particulars would have been in order. He was confronted by the witnesses against him and had the right to cross-examine. He had the aid of process to summon witnesses at public expense and availed himself of that right by calling twelve witnesses. Defendant was being held for murder but activities in his behalf were not curtailed. There was no harassment nor undue haste.

There was no lack of due process. Nothing appears indicating that State v. District Court, supra, should be overruled.

II. Defendant claims error in the failure to disqualify two prospective jurors.

Venireman Irvin Fischels on voir dire examination said he had heard Negroes where he worked talk about the case. At first he said he might have formed some opinions. He then said that he would listen to all the evidence and look at all the evidence and all the exhibits before making up his mind; that the defendant was innocent until proven guilty beyond a reasonable doubt and that he would be able to base his decision solely on what took place in the courtroom.

Venireman Donald E. Gindt on voir dire examination said he had been a police officer twenty years ago in 1942. He said he knew three people involved. He mentioned a police photographer who took and identified some pictures, a policeman who repeated defendant's nonincriminating statements, and the sheriff who did not testify. He said he would give these witnesses' testimony the same weight as any other witnesses' testimony. He said that he had no prejudice toward the testimony of law enforcement officers; that he was "on the side of the law"; that he would be able to follow the court's instructions on presumption of innocence and that an indictment should have no weight in the jury's deliberation. Being on the side of the law should be the position of every citizen. His statement expressed a belief in law enforcement and not a preconceived notion as to the guilt or innocence of the defendant.

The trial court has large discretion in ruling on challenges for cause. In this case we find no abuse of this discretion. A comparable situation was considered in State v. Sommer, 249 Iowa 160, 176, 86 N.W.2d 115, and cases cited therein.

III. The State's first witness was police photographer who took and identified pictures of the burned woman. The pictures were taken in the hospital the day after the fire. Defendant objected to the introduction of the pictures as gruesome, inflammatory and unfairly prejudicial in being introduced at the beginning of the trial.

The pictures were identified as true and accurate representations of the woman in her hospital bed. Defendant was charged with causing the condition portrayed. If the pictures were gruesome so was the act with which defendant was charged.

The pictures were properly admitted in evidence and the order in which they were offered was a procedural matter to be determined by counsel for the State. See State v. Beckwith, 243 Iowa 841, 846, 53 N.W.2d 867, and cases cited therein.

■ ■ IV. Defendant claims error in admitting into evidence statements of defendant's wife under the res gestae exception to the hearsay rule.

The burned woman went to the neighbors seeking help. Help was refused. It was estimated that she was in the house about six minutes. During this time she asked that "the law" be called. She then went out and sat on the steps. She kept screaming for help and accusing defendant while on the steps and on the way to and in the hospital. She was horribly burned with 30 percent of her body affected by burns, "her clothes practically burned off of her" and parts of her skin "looked like it was hanging off." One witness said he could see the white meat where she was burned. Neither her condition nor a time interval of six minutes before accusing defendant by name was conducive to a cool and calculated fabrication of a malicious accusation. This is true even if we ignore her first request. The trial court has a considerable discretion in ruling on admissibility of claimed res gestae evidence. State v. Tornquist, 254 Iowa 1135, 1157, 120 N.W.2d 483, 496.

■ The declarations of the victim were clearly admissible as part of the res gestae. A recent pronouncement on this subject is found in State v. Drosos, 253 Iowa 1152, 1162, 114 N.W.2d 526, 532: "Declarations and exclamations of the person injured are admissible in evidence where they are so connected with the crime as to constitute a part of the res gestae, and this is true whether they incriminate the accused or whether they exculpate him. (Citations) Spontaneity and such closeness of connection with the transaction as to exclude any presumption of fabrication are the essentials." See also State v. Sommer, supra, loc.

cit. 178 of 249 Iowa; State v. Berry, 241 Iowa 211, 216, 40 N.W.2d 480.

V. Defendant claims that prejudicial misconduct by the prosecutor in suppressing evidence deprived defendant of a fair trial.

 While it is not a prosecutor's duty to prepare a defendant's defense it is his duty to see that a person charged with crime has a fair trial. Under no circumstances would we condone suppression of important evidence. The whole picture, however, in the case before us does not support defendant's charge.

In addition to other tests and examinations of the burned clothing, all of which appear in the record, the garments were sent to the Washington F. B. I. office for analysis for inflammable substances. The report back to the chief of police said "Results of examination, there are no traces of gasoline or other flammable accelerants found on the submitted clothing."

The police department had been instructed by the county attorney's office that counsel for defendant could talk to any of the witnesses at any time. This was apparently done because fire and police officers were called as witnesses by defendant. Their testimony showed the same negative results as the F. B. I. report. Defendant never asked for a chemical test. Defendant's counsel was told that a test "didn't show any gas" but not until Friday preceding the beginning of the trial on Monday did counsel learn that there was an F. B. I. report.

The fact that examination and testing of the victim's clothing disclosed no evidence of gasoline was no secret.

The assistant chief of the fire department testifying for the State said he smelled no gas when he inspected the premises. He searched for but found no containers that might have contained gas or other inflammables. He attempted to, but could not, smell gas on the victim's clothing. On cross-examination he testified that the bottom of the mattress was not burned and that it was his conclusion that the bedroom fire was not from under the bed. This would tend to refute the testimony of E. J. Polk, quoted supra.

The chief of the fire department examined the premises and searched for combustibles. He picked up the things he could find to smell for inflammable liquids. He picked chunks out of the mattress, had the bed taken apart and directed a search of the neighboring premises, nothing was found to indicate the use of gasoline. When the victim's clothes were delivered to him he could smell no gas. He directed three of his men to conduct a boiling test. The garments were kept in a tightly closed plastic bag.

Under orders of his superiors a lieutenant with the fire department aided by a captain and an assistant chief conducted a boiling test on the victim's clothing. The lieutenant testified that when the articles were received there was no odor. The boiling test produced neither gasoline fumes nor film on the water that could be detected by any of the three men.

Dr. George Christianson, a research biochemist, a holder of a Ph.D. degree, testified for defendant. He testified that burned gasoline leaves a residue which could be detected. He testified as to methods of testing and that a boiling process would definitely bring out the smell of gasoline if there is any present. He said if inflammables had been thrown on the bed and not on the victim, and she caught fire the tests of her clothing would show nothing.

The next day Doctor Christianson returned for further testimony; he had made a visual examination and a vacuum distillation test of the clothing. He described his testing in detail. His test developed a predominant odor of a person, a trace of something like a cooking vat or kitchen odor but no petroleum odor or residue. The witness was positive in his testimony and stated that if the fire on the victim's clothes had been started by gasoline he would have found it.

Dr. Harvey Diehl, a professor of chemistry at Iowa State University and a holder of a Ph.D. degree, testified in rebuttal for the State. On cross-examination he testified boiling a cloth is what is known as steam distilling and releases any odors of gasoline and leaves a film on the water.

From the record it appears that four witnesses testified to

examinations or tests for gasoline odor or residue. They were assisted by at least two others whose observations were reported. Two Ph.D.'s in chemistry, including one who examined the clothing, testified. No witness found evidence of gasoline on the victim's garments. Neither did the F. B. I. The F. B. I. report was merely cumulative of matters otherwise known and extensively covered by the testimony. The F. B. I. report showed the same thing as testified to by several witnesses, i.e., that no evidence of gasoline could be found on the victim's clothing. There is no prejudicial misconduct in failure to bring forth evidence of a fact that is otherwise well established and nowhere controverted.

The only thing defendant's counsel did not know until three or four days before trial was the name of one of the agencies making a test.

The case at bar is not at all comparable to State v. Tolson, 248 Iowa 733, 82 N.W.2d 105, where we reversed for persistent injection into the record of inadmissible and highly prejudicial matters. See also State v. Leuty, 247 Iowa 251, 73 N.W.2d 64, and State v. Comes, 245 Iowa 485, 62 N.W.2d 753.

■ Exclusion of evidence is not prejudicial error where the same facts are shown by other evidence. State v. Johnston, 221 Iowa 933, 267 N.W. 698, and State v. Schumann, 187 Iowa 1212, 175 N.W. 75.

■ No claim of misconduct was made in the trial court. There was no motion for mistrial. There was no claim of misconduct in defendant's motion for new trial.

We have as a matter of grace considered the situation in detail but the claim of error now is not timely. State v. Olson, 249 Iowa 536, 554, 555, 86 N.W.2d 214, State v. Miller, 254 Iowa 545, 556, 117 N.W.2d 447, 454, and State v. Tornquist, 254 Iowa 1135, 1139–1141, 120 N.W.2d 483, 486, 487.

■ ■ VI. Detective Harold Berneman of the Waterloo Police Department testified as to interrogation of defendant while in custody. Defendant's claim of error is without merit for a number of reasons. The witness did not testify to anything in the nature of a confession or incriminating admission.

Defendant's statements as related by the witness were substantially the same as defendant's testimony at the trial. There is no claim of any third-degree methods or that the statements were coerced or involuntary. The test of admissibility of an admission or confession is whether or not it was voluntary. State v. Stump, 254 Iowa 1181, 1191, 119 N.W.2d 210, 216.

VII. During the introduction of the evidence for the defense defendant asked for a continuance "until such time as the person for the F. B. I. who made this analysis could be brought here to testify or, in the alternative, his deposition taken * * *." The request for continuance was not granted. Defendant claims error.

Section 780.2, Code of Iowa, provides:

"Continuances. The provisions of the Code of civil procedure relative to the continuances of the trial of civil causes shall apply to the continuance of criminal actions * * *."

Rule of Civil Procedure 183 permits a continuance on motion and provides:

"Causes for continuance.

"(a) * * *

"(b) All such motions based on absence of evidence must be supported by affidavit of the party, his agent or attorney, and must show: (1) The name and residence of the absent witness, or, if unknown, that affiant has used diligence to ascertain them; (2) what efforts, constituting due diligence, have been made to obtain such witness or his testimony, and facts showing reasonable grounds to believe the testimony will be procured by the next term; (3) what particular facts, distinct from legal conclusions, affiant believes the witness will prove, and that he believes them to be true and knows of no other witness by whom they can be fully proved. If the court finds such motion sufficient, the adverse party may avoid the continuance by admitting that the witness if present, would testify to the facts therein stated, as the evidence of such witness."

Defendant admits that there was no compliance with this rule. State v. Sieren, 253 Iowa 118, 121, 111 N.W.2d 249, after quoting this rule says:

"Defendant's unverified motion did not comply with the statutory provisions. If there had been a compliance it is possible the State might have admitted the testimony of the witness. Not being in compliance the trial court had no other recourse than to overrule the motion.

"The question is whether or not in making such ruling the trial court abused its discretion. Such discretion as to continuance on the part of the trial court is very broad." (Citations)

In the case at bar there was no error in the court's ruling.

VIII. Defendant claims that the prosecutor in closing argument stated facts and inferences not based on the record. We have compared the argument with the evidence. We find no material inaccuracy. State v. Christenson, 193 Iowa 56, 186 N.W. 462, was a prosecution for murder. Statements of the county attorney in closing argument were challenged. We said: "The statement of the county attorney in that instance was substantially correct. If it were not, we would not review here the mere accuracy of the attorneys in the statement of the evidence which the jury had heard. Such inaccuracies are not misconduct, in a legal sense." (Loc. cit. 61) The situation here is comparable.

IX. Defendant challenges the court's instruction on corpus delicti and urges that neglect and improper treatment of the victim and not her burns caused her death. The attending physician gave the cause of death as toxemia from the burns, pneumonia and uremia. The victim was a chronic asthmatic, and had been previously; and in the hospital was treated with morphine. In 1960 she had been committed to Independence as a narcotics addict.

There was testimony by the autopsy pathologist that in his opinion there was neglect, inadequate and improper treatment and that with adequate and proper treatment the victim would not have died.

The court's Instruction No. 13 was as follows:

"You have been instructed that one of the propositions which must be proved by the State beyond a reasonable doubt

is that fire set and ignited by the defendant on the person of Pearl McClain resulted in her death.

"In this connection you are instructed that if such unlawful acts of the defendant, if any, committed as hereinbefore defined in these instructions, caused the death of Pearl McClain or directly contributed thereto, then such acts resulted in the death of Pearl McClain within the meaning of these instructions; and this is true even though such acts of the defendant, if any, were not the sole cause of her death, and even though negligent medical treatment subsequent to injuries by burning joined and operated in conjunction with such original injuries by burning to result in the death of Pearl McClain and even though the said Pearl McClain would not have died had it not been for such negligent medical treatment."

In State v. Morphy, 33 Iowa 270, 276, 11 Am. Rep. 122, the trial court used these words in an instruction: " 'If death ensues from a wound given in malice, but not in its nature mortal, but which being neglected or mismanaged, the party dies, this will not excuse the prisoner who gave it; * * *.' "

The authorities were reviewed and the instruction was approved. See State v. Smith, 73 Iowa 32, 34 N.W. 597; State v. Edgerton, 100 Iowa 63, 70, 69 N.W. 280; and State v. Gabriella, 163 Iowa 297, 304, 144 N.W. 9.

It is well established that negligent treatment or neglect of an injury will not excuse a wrongdoer unless the treatment or neglect was the sole cause of death.

There was no error in the court's instruction.

X. One of the essential elements of proof required by the court's instructions was that defendant, Isam McClain, did unlawfully throw gasoline or combustible oil upon the person of Pearl McClain, or immediately adjacent thereto, and ignite the same.

Defendant claims error in the use of the words "combustible oil" and "or immediately adjacent thereto."

The chemist testifying for defendant referred to gasoline and petroleum products. There was testimony about an oil heating stove thrown out of the house by an early arrival at the fire,

Mrs. Anding. It was a heater that would burn fuel kept in a container. No container was found although a witness for defendant said she saw defendant throw what she thought was water on the fire from a red bucket. The red bucket apparently was not found. The principals in this domestic turmoil were not educated people. The use of the word "gas" to describe various kinds of petroleum combustibles would not be strange.

There was testimony to support the use of the words "immediately adjacent thereto." The witness, Polk, in relating a conversation with defendant testified: "He said that he ran her under the bed, poured gas on the bed and set it afire."

We find no merit in defendant's claim of error.

XI. We have examined the whole record. Defendant was vigorously defended and fairly tried. We find no reversible error.

The case is—Affirmed.

GARFIELD, C. J., and HAYS, LARSON, THOMPSON, PETERSON, MOORE and STUART, JJ., concur.