STATE of Iowa, Appellee,

v.

James Wendell HALL, Appellant.

No. 59289.

Supreme Court of Iowa.

Jan. 19, 1977.

Rehearing Denied Feb. 10, 1977.

William M. Tucker and Bruce L. Walker, Iowa City, for appellant.

Richard C. Turner, Atty. Gen., Garry D. Woodward, Asst. Atty. Gen., and Jack W. Dooley, County Atty., for appellee.

REYNOLDSON, Justice.

Defendant was charged under § 690.1, The Code, 1973, with the unlawful killing of Sarah Ann Ottens. Her body was found in room 429, Rienow Hall, a University of Iowa dormitory. After defendant was convicted and sentenced to imprisonment for 50 years, he appealed.

In our first review, *State v. Hall*, 235 N.W.2d 702 (Iowa 1975), we held defendant had demonstrated no reversible error, but concluded trial court should have granted his post-trial motion to examine certain transcripts of grand jury testimony to determine whether the State had suppressed exculpatory evidence. Because those pages of testimony were not before us, we remanded for further limited proceedings:

> "We therefore remand the case to the trial court with directions that an *in camera* inspection of grand jury transcripts be made in the presence of counsel for defendant and for the State [citations].
>
> "We are really concerned with only about 275 pages of a total of 1250 pages of grand jury transcript. The remainder was already available to defendant before and during trial.
>
> "If such inspection discloses exculpatory evidence was suppressed, a new trial shall be granted. If not, the judgment shall stand affirmed. This is the practice approved in *State v. White*, supra, 260 at 1010, 151 N.W.2d at 557.

"Of course, defendant's right to appeal from the trial court's *in camera* determination is preserved."—235 N.W.2d at 731.

Upon remand, the State turned over to defendant the previously-undisclosed grand jury testimony. The prosecution assented to a procedure which allowed defense counsel to examine all of the material and avoided an *in camera* type hearing.

Defendant then filed a motion asserting the grand jury testimony contained exculpatory information necessitating a new trial. This motion was later amended to raise the invalidity of the indictment under which defendant was charged. This asserted invalidity was grounded on a claimed violation of §§ 771.21 and 771.22, The Code, because a third quarter grand jury, without a court order, considered charges against defendant which had already been considered by the second quarter grand jury.

At the same time, defendant filed a motion to produce which, together with amendments thereto, called for "all information known" to the State relating to numerous persons and incidents revealed in the newly disclosed grand jury testimony, and requested inspection of all latent fingerprints found in the room in which the victim's body was discovered.

In an exhaustive ruling, trial court carefully analyzed the grounds for these motions and overruled them. Defendant now appeals again, pursuant to the right reserved in our first opinion. He asserts 1) the indictment was invalid because it violated §§ 771.21 and 771.22, The Code, 2) exculpatory evidence was suppressed, and 3) trial court erred in overruling his motion to produce. We affirm.

### I. Validity of the indictment.

█ In attacking the indictment, defendant is confronted at the outset with the limited nature of our remand: an *in camera* inspection of grand jury transcripts to determine if exculpatory evidence was suppressed.

"It is well settled in Iowa that when the Supreme Court remands for a special purpose, the district court, upon the remand, is limited to do the special thing authorized by this court in its opinion, and nothing else. It has no power or jurisdiction to do anything except to proceed in accordance with the mandate."—*Kuhlmann v. Persinger*, 261 Iowa 461, 468, 154 N.W.2d 860, 864 (1967).

See also *Hetherington Letter Co. v. O. F. Paulson Const. Co.*, 192 N.W.2d 808, 809 (Iowa 1971); *State v. Mayhew*, 183 N.W.2d 723, 725 (Iowa 1971).

Defendant's attempt to enlarge a very constricted area of inquiry by challenging the indictment must fail. Thus we need not consider the merits of his contention. Our treatment of this issue is not to be taken as any indication we perceive merit in defendant's assertions, however. A logical analysis of §§ 771.21 and 771.22, illuminated by *State v. Scott*, 99 Iowa 36, 68 N.W. 451 (1896), and *State v. Collis*, 73 Iowa 542, 35 N.W. 625 (1887), does not, in our view, support defendant's attack on the indictment.

### II. Suppression of exculpatory evidence.

█ Trial court, following hearing, held there was no material exculpatory evidence in the formerly-suppressed grand jury testimony. In appealing from this finding, defendant relies on authorities which indicate he is asserting a violation of due process clause of Amendment 14, United States Constitution, and consequently his right to a fair trial. In our review we therefore examine the totality of the circumstances. *State v. Boren*, 224 N.W.2d 14, 15 (Iowa 1975), cert. denied, 422 U.S. 1008, 95 S.Ct. 2630, 45 L.Ed.2d 671 (1975); *State v. Elmore*, 201 N.W.2d 443, 445 (Iowa 1972).

We have studied transcripts of the grand jury testimony and the remand hearing mindful of the policy considerations beneath still-developing constitutional disclosure requirements. These constitutional requisites do not necessarily comport with recommended discovery practices. See A.B.A Standards Relating to Discovery and Procedure Before Trial, §§ 1.1 through 4.7, at 11–19 (approved draft, 1970).

Although our designation of the type of information which must be disclosed has varied from "exculpatory evidence" (*State v. Hall*, supra, 235 N.W.2d at 731; *State v. Houston*, 209 N.W.2d 42, 47 [Iowa 1973]) to "matters germane" (*State v. Deanda*, 218 N.W.2d 649, 652 [Iowa 1974]) to "important evidence" (*State v. McClain*, 256 Iowa 175, 184, 125 N.W.2d 764, 769 [1964]) to "materially exculpatory evidence" (*State v. Fryer*, 226 N.W.2d 36, 40 [Iowa 1975]; *State v. Aossey*, 201 N.W.2d 731, 734 [Iowa 1972], cert. denied, 412 U.S. 906, 93 S.Ct. 2292, 36 L.Ed.2d 971 [1973]), it is clear from both federal and Iowa decisions not all information in the prosecution's files must be turned over as a matter of constitutional due process.

Some of the underlying policy considerations were discussed in *State v. Eads*, 166 N.W.2d 766, 768–775 (Iowa 1969), and *State v. White*, 260 Iowa 1000, 1005–1008, 151 N.W.2d 552, 555–556 (1967). To these should be added the concept that the goal of ultimate truth is not served by substituting a parasitic reliance on police reports and statements for vigorous defense investigation.

Thus the rule against defense access to all information in the prosecutor's file and dragnet requests for information has been steadfastly maintained. *United States v. Agurs*, 427 U.S. 97, 106, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342, 353 (1976); *State v. Hall*, supra, 235 N.W.2d at 731; see Annot., 34 A.L.R.3d 16 (1970).

To constitute a due process violation under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215, 218 (1963) the suppressed information must be material either to the guilt or punishment of the defendant, not merely potentially or inferentially helpful to the defense. Confronted with a defense argument that the *Brady* rule should be expanded to include material which might conceivably aid the defense in preparation of its case, the federal circuit court in *Williams v. Wolff*, 473 F.2d 1049, 1054 (8 Cir. 1973), observed,

"There is little in the prosecutor's file which might not 'aid' in some remote or fanciful way the defense of a case. Unless we are prepared to hold that the prosecutor's file shall be opened to the defense upon demand, which may, indeed, be in the wind, we are not prepared to bring the suggested expansion within the constitutional duty."

The eighth circuit's speculation a *Brady* rule expansion might be "in the wind" was laid to rest in *Agurs*, supra, 427 U.S. at 109, 96 S.Ct. at 2400, 49 L.Ed.2d at 353, where the United States Supreme Court said,

"If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice.

"Whether or not procedural rules authorizing such broad discovery might be desirable, the Constitution surely does not demand that much. While expressing the opinion that representatives of the State may not 'suppress substantial material evidence,' former Chief Justice Traynor of the California Supreme Court has pointed out that 'they are under no duty to report sua sponte to the defendant all that they learn about the case and about their witnesses.' *In re Imbler*, 60 Cal.2d 554, 35 Cal.Rptr. 293, 301, 387 P.2d 6, 14 (1963). And this Court recently noted that there is 'no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on the case.' *Moore v. Illinois*, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706. *The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.*" (Emphasis supplied).

The same concept was thus articulated in *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104, 108 (1972):

"We do not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has

disclosed evidence possibly useful to the defense but not likely to have changed the verdict * * *.' *United States v. Keogh*, 391 F.2d 138, 148 (CA 2 1968)."

██ Our decisions have not attempted to define "materiality" in the context of delineating what information the State must divulge. However, some specific ancillary rules have evolved in our opinions. Information will not be deemed material if other State witnesses acknowledge the matters. *State v. Aossey*, supra, 201 N.W.2d at 734. Information may be material and exculpatory even though inadmissible as evidence and contradicted by other information. *State v. Peterson*, 219 N.W.2d 665, 674 (Iowa 1974). Failure to furnish evidence of a fact otherwise well established and nowhere controverted does not become "material" in the context of a due process violation. See *State v. McClain*, supra, 256 Iowa at 186, 125 N.W.2d at 770.

While the concept of constitutional "materiality" was explored in federal decisions, including *Brady*, supra; *Napue v. Illinois*, 360 U.S. 264, 271, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217, 1222 (1959); and *United States v. Keogh*, supra, even a limited effort to stake out its varying dimensions was not attempted by the United States Supreme Court until *Agurs*, supra.

The *Agurs* court identified three situations involving the discovery, after trial, of information which had been known to the prosecution but unknown to the defense. The court noted in each situation the measure of *Brady* "materiality" was defined in different language.

The first situation defined by the Court (typified by *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 [1935]) presented a case where "the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury." Thus prosecutorial misconduct and corruption of the truth-seeking function of the trial process necessitate a strict standard. The conviction "must be set aside if there is any reasonable likelihood that the false testimony could

have affected the judgment of the jury." *Agurs*, supra, 427 U.S. at 103, 96 S.Ct. at 2397, 49 L.Ed.2d at 349–350.

The second situation is characterized by a pretrial request for specific information. The *Agurs* court observed this was the case in *Brady*, noting,

"A fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial."

427 U.S. at 104, 96 S.Ct. at 2398, 49 L.Ed.2d at 350.

Obviously, there is little basic difference between this test of materiality and that set out in the preceding paragraph.

The third situation arises when there has been only a general request for *"Brady* material". The *Agurs* court equated such a dragnet request with no request at all. It placed to one side those cases in which the information is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, in which case nondisclosure would violate defendant's constitutional right to fair trial. In the cases remaining, *Agurs* held the trial judge "should not order a new trial every time he is unable to characterize a nondisclosure as harmless under the customary harmless error standard." Rather, only where "the omitted evidence creates a reasonable doubt that did not otherwise exist" has a constitutional violation occurred. *Id.*, 427 U.S. at 112, 96 S.Ct. at 2401, 49 L.Ed.2d at 354–355.

██ The case before us falls in the second fact pattern, above, because defendant also made a pre-trial request for the grand jury transcripts. We have therefore examined these transcripts and the remand hearing record to determine if the information, undisclosed despite request, "might have affected the outcome of the trial."

Certain grand jury testimony of Elizabeth Allen, who was in Roberson's room just before his meeting with defendant on the stairway, disclosed she remembered only one telephone call (rather than two as

shown by State's evidence) and that Roberson may have spent more time in the room before leaving to let defendant in the building. Most of this information was available to defendant through minutes of evidence attached to the indictment and through Roberson's disclosed grand jury testimony. Defense counsel interviewed Allen before trial. It is clear the gist of her testimony was available to the defendant and used by him at trial.

John Jutte was a lead investigator for the Iowa Bureau of Criminal Investigation. He appeared before the grand jury several times. Through inadvertence, a small portion of his testimony was not furnished to the defense. Jutte's undisclosed grand jury testimony revealed he had timed the distance between defendant's room and the stairway where Roberson met defendant. The defense asserts this short time sequence was helpful to defendant's case. But the defense had a witness do the same experiment with a similar result and used his uncontroverted testimony at trial.

Jutte's grand jury response to a question concerning fingerprints disclosed " * * * actually we have more than two but we are primarily concerned with a couple of them due to condition, location, etc." The defense asserts if it had been known there were more fingerprints in room 429 there would have been an opportunity to investigate further. But Jutte's above statement concerning "condition" is consistent with disclosed testimony there were only two latent prints, plus other smudged prints. Defendant does not dispute trial court's observation his claim concerning other fingerprints had been "hashed and rehashed during preliminary hearings and during the trial." Nor is there any denial in the record that defense counsel, prior to trial, went to the B.C.I. laboratory and examined "the body of evidence that was in the possession of the B.C.I." We assume this included any fingerprints available from room 429.

The previously-undisclosed grand jury transcript revealed Mary Viner testified Ottens (the victim) had told her of a stranger entering the latter's room a few days before her death. But at the remand hearing the defense conceded this information had been obtained from Viner in a pre-trial interview.

Other issues are raised relating to claimed suppression of testimony concerning a composite sketch of the supposed murderer. However, responses of persons to whom the sketches were shown were vague and conjectural.

We have examined the other claimed instances of suppression of exculpatory information and find them less meritorious than those above mentioned.

■ In summary, most of the grand jury testimony not furnished defendant conveyed information already available to the defense. It therefore can hardly be classified as "material" in the sense its nondisclosure deprived defendant of a fair trial. See *Agurs*, supra, 427 U.S. at 107, 96 S.Ct. at 2399, 49 L.Ed.2d at 352 ("For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose"); *State v. Fryer, supra,* 226 N.W.2d at 39–40; *State v. Aossey,* supra, 201 N.W.2d at 734; *State v. McClain,* supra, 256 Iowa at 186, 125 N.W.2d at 770; 3 Orfield, Criminal Procedure Under the Federal Rules § 26:338, at 649–650 (1966) ("In general there is no prejudicial error if the information withheld is otherwise in the possession of the defendant").

The balance of the information in the grand jury transcript not furnished defendant might arguably have provided a few investigatory leads of highly speculative value. It may have aided defendant, in the language of *Williams v. Wolff,* supra, "in some remote or fanciful way." It was not exculpatory *per se.* It lacked the obvious value and impact of the information we held exculpatory in *Peterson,* supra. We cannot find it might have affected the outcome of the trial. Trial court therefore did not err in overruling the motion for new trial on this issue. See *Agurs,* supra, 427

U.S. at 111, 96 S.Ct. at 2401, 49 L.Ed.2d at 354, 355, n. 20; *Williams v. Wolff,* supra.

III. *Motion to produce.*

■ Defendant's motion to produce and amendment thereto demanded *inter alia,* that the State produce all information known to it concerning numerous named and unnamed individuals mentioned or otherwise described in the course of a loosely-controlled and meandering grand jury investigation. The implication to be derived from the motion is that the grand jury transcript contains no exculpatory information but the response to the motion, if granted, might develop something useful.

Evidence adduced from the prosecuting attorneys at the remand hearing tended to show there was no exculpatory information available in these instances.

We agree with trial court, however, that the motion plunged beyond the limits of our remand order. The motion was properly overruled on this ground. *Hetherington Letter Co. v. O. F. Paulson Const. Co.,* supra, 192 N.W.2d at 809; *State v. Mayhew,* supra, 183 N.W.2d at 725; *Kuhlmann v. Persinger,* supra, 261 Iowa at 468, 154 N.W.2d at 864.

Our affirmance on the first appeal was based on the condition exculpatory evidence had not been suppressed. The record now demonstrates there was no suppression. We affirm the judgment and sentence entered below.

AFFIRMED.

All Justices concur, except REES, J., who takes no part.