## STATE OF IOWA v. C. J. WINDAHL, Appellant.

**Homicide:** EVIDENCE. Where it is defended that a shot was accidental and fired merely to scare, evidence that defendant said he would not shoot next time to scare but to kill is admissible though defendant did not then have deceased in mind.

**Same.** There being question as to the name of the deceased, his photograph, taken after he was shot, is admissible in identifying.

**INDICTMENT.** That an indictment for homicide states the name of deceased erroneously is immaterial. McClain's Code, 5687.

**Manslaughter:** "WILLFULLY" DEFINED. No malice being involved in manslaughter, "willfully" may be defined in a prosecution for it as "willingly done, an operation of the mind that consents to an act."

**Practice in Supreme Court.** An abstract and argument filed after submission will not be considered unless a proper showing is made.

*Appeal from Mahaska District Court.*—HON. D. RYAN, Judge.

SATURDAY, OCTOBER 5, 1895.

· The defendant was indicted, tried, and. convicted of the crime of manslaughter, and appeals.—*Affirmed.*

*W. S. Kenworthy* and *J. C. Williams* for appellant,

*Milton Remley*, attorney general, for the state.

· Deemer, J.—I. The case was submitted upon a transcript of the record. After the submission, and after the adjournment of the May term of this court, an abstract and argument on behalf of appellant were filed. These we will not consider, except upon a proper showing, which has not been made in this case, and they will be stricken from the files. *In re Caywood's Will*, 56 Iowa, 307 [9 N.

W. Rep. 238]; *Johnson v. Railroad Co.*, 51 Iowa, 25 [50 N.
W. Rep. 543]; *State v. Thompson*, 95 Iowa, 464 [64 N. W.
Rep. 419]. On account of the character of the case, we
have examined the record carefully, and given it very
full consideration. The defendant was indicted for
the killing of one William Adams. It appears that at
the time of the homicide defendant was a special police-
man in the city of Oskaloosa; that he arrested the
deceased, with a companion, without a warrant, for the
crime of vagrancy, or for some misdemeanor, said to
have been committed by them, not in his presence.
While on the way to the mayor's office, the deceased
gave the defendant a shove, and then ran away from
him, apparently attempting to escape. The defendant
ordered deceased to halt, and, he not obeying, defend-
ant fired three shots, the last of which took effect,
resulting in the death of the arrested man. Two
defenses were interposed: *First*, that the killing was
justifiable in order to prevent the escape of the
deceased; and, *second*, that it was accidental, in that
defendant fired the shots to frighten, and not to kill.
The jury found the defendant guilty, and, as before
stated, he appeals.

It appears that the deceased was a tramp, and his
name is a matter of some dispute. It is stated in the
indictment to be William Adams, but there is some
testimony tending to show that it was in fact
J. P. Barnes. The court instructed in substance,
that an erroneous allegation as to the name was
not material. The instruction was correct. McClain's
Code, section 5687, and cases cited.

II. A photograph of the deceased, taken after he
was shot, was introduced in evidence, over defendant's

objection.    There was no error in this.    As there seemed to be some question about the name of deceased, the photograph was admissible as a ·means of identification.    *Udderzook v. Commonwealth*, 76 Pa. St. 352.

III.    Testimony was adduced tending to show that some time before the homicide defendant stated that the next time he shot he would not shoot to scare, but to kill.    In view of the defense of misadventure interposed, we think the testimony was clearly admissible, although the defendant did not have the deceased in mind at the time he made the remark.

IV.    After the jury had retired to deliberate, they asked for further instructions as to what was meant by the word "willfully," as used in the indictment and instructions given by the court.    In response thereto the court gave the following: "By communication in writing you have asked additional instruction defining the word 'willfully.'    The word 'willfully' implies an act willingly done; an operation of the mind that consents to an act. As applied to this case, you are instructed, if this defendant's mind approved or consented to firing the shot that killed, then, to this extent, the act was willfully done.    It does not necessarily follow that you must find that the defendant intended to kill when he fired.    If he used a dangerous and deadly weapon, in a careless and reckless manner, and so killed without justification, as defined in instructions heretofore given, this will constitute an act willfully done, and amount to manslaughter; or if he fired the fatal shot, purposely intending to shoot deceased, and in so doing used unnecessary force and violence, this will also render the act willful, and constitute manslaughter." "The above instruction will be accepted by you in connection with and as explanatory of the instructions heretofore given you."    This additional instruction,

considered abstractly, does not properly define the word "willfully," as used in criminal statutes. But as applied to the facts of this case, we think it was correct. The defendant was accused of the crime of manslaughter. This crime does not involve the element of malice, and the state, in order to procure a conviction, need not establish either express or implied malice. The only question in the case to which this instruction could relate, then, was as to whether the act was done intentionally, or whether it was the result of an accident. The word "willfully," as used in the indictment and in the instructions, meant nothing more than "intentional," as distinguished from "accidental" or "involuntary."

V. Certain instructions were asked by defendant, and refused. In so far as they were correct, they were given by the court in his charge to the jury.

VI. The instructions given are excepted to. We think they were more favorable to defendant than the facts would warrant. 2 Bishop, Cr. Law, section 649. We have examined the whole record with care, and, finding no error, the judgment is *affirmed*.