## Commonwealth *v.* Dreamer, Appellant.

Argued October 5, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Thomas L. Christman,* for appellant.

*James C. Bane,* District Attorney, with him *Wray G. Zelt,* Special Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE MAXEY, November 23, 1936:

Robert Dreamer, the appellant, was convicted of the murder of Thelma Young, aged 17 years, on December 29, 1927. Death was the penalty imposed. Only two questions are raised on this appeal and neither requires extended discussion.

The young girl named in the indictment was beaten and murdered while defending herself against ravishment. On December 29, 1927, she left her home, attended a moving picture theatre, and afterwards was seen going in the direction of her home in North Franklin Township, near Washington, Pa. About 8 o'clock on the following morning her body was found on a vacant lot. It bore evidence of a desperate struggle against a brutal assailant, who beat her savagely, raped her and killed her. She was nearly denuded of clothing, she had been strangled, and her head had been lacerated by a brick, which was found near by, stained with blood.

This crime remained unsolved until January 21, 1936, when this appellant was arrested, and upon being confronted with a button picked up at the scene of the crime at the time the body was discovered, he admitted his

guilt. His confession was reduced to writing. He subsequently repeated it. At his trial he repudiated it, but after hearing the evidence the jury had no reasonable doubt that he went to Baltimore Alley, waylaid his victim, and completely carried out his felonious purpose in the vacant lot where her body was found. His confession contained details which stamped truth upon it despite his subsequent repudiation.

There are but three assignments of error. The first reads as follows: "The learned trial judge erred in failing to instruct all prospective jurors to disregard the remark of a certain juror who expressed his opinion as to the guilt of the defendant while being examined upon his voir dire, and which opinion was detrimental and prejudicial to the defendant."

When prospective juror White was under direct examination upon his voir dire, he was asked by the assistant district attorney: "As a result of what you have read in the newspapers or what you have discussed or heard in discussions, have you any fixed opinion as to the guilt or innocence of this defendant?" He answered: "Well, it looks like as if he might be guilty." Defendant's counsel then requested the court to instruct the jurors in the box and any prospective jurors to disregard entirely what that juror had just said. The trial judge instructed the jurors then in the box to "disregard any remarks that they have heard made by the juror on the stand." The juror who made the remark in question was subsequently "excused for cause." Later, during the selection of the jury, S. M. Stockwell was called and examined upon his voir dire. When asked as to whether he had a fixed opinion in reference to the defendant's guilt or innocence, he answered: "I would say guilty." In response to the objection of defendant's counsel, the court said: "We will strike that out and instruct the jury to disregard the answer of the juror and also any prospective jurors that may be called." This juror also was "excused for cause." We see no merit whatsoever

in counsel's contention that the trial judge's monitory words were inadequate. No juror was accepted until he had qualified himself to give the defendant a fair and impartial trial. The trial judge in his charge made it clear to the jury that it could render a verdict of guilty only after being convinced by the evidence, beyond a reasonable doubt, of defendant's guilt. This assignment is overruled.

About ten minutes after Miss Young's body was found, photographs of it and its surroundings were taken by the county detective. The district attorney offered these pictures in evidence "for the purpose of showing the exact condition of the ground, the fence, the position of the body with the fence, the position of the legs, the condition of the clothing, such as the coat being torn, the bloomers being torn, the position of the bloomers at the time she was found, the arm out of the coat sleeve, the location of the two and a half inch cut in the forehead which has been mentioned by Dr. Ramsey, it all being a corollary of the physical object itself, so that the jury might have a better understanding of the wounds on the body which the doctor has testified, and to corroborate the testimony of certain other witnesses who have already testified, and who will later testify. . . ." Defendant's counsel's objection to the admission of these photographs was overruled. The court held these photographs admissible for the purposes stated, "with this admonition to counsel, that they are not offered for the purpose of inflaming the minds of the jury but for the purposes set forth in the offer of counsel." In the trial judge's charge, he instructed the jury not to permit these photographs to inflame their minds against the defendant. He said: "They are not in the record for that purpose, because this defendant is entitled to your cool and calm and free deliberation, and you use those exhibits only for the purpose that this court has outlined to you, that they are legitimate for, and lay aside any passion or prejudice against the defendant by reason of

any exhibition of the girl which may appear upon the photograph." These photographs were admissible. They showed, inter alia, the violence of the attack made on the young victim. It was competent for the witness who discovered Miss Young's body to describe exactly what he saw, the condition of the body and the objects which surrounded it. It was equally competent to present a photograph which portrayed these things more accurately than mere words could do. As Wigmore says in section 792 of his second edition of Evidence: "A photograph, like a map or diagram, is a witness' pictured expression of the data observed by him and therein communicated to the tribunal more accurately than by words. Its use for this purpose is sanctioned beyond question."

The admission in evidence of photographs of victims of murder has been sanctioned by this court and by courts of other jurisdictions, provided that the photograph was not offered and was not used for the purpose of inflaming the minds of the jurors against the accused. See *Com. v. Sydlosky*, 305 Pa. 406, 158 A. 154, and *Wilson v. U. S.*, 162 U. S. 613.

In this case the crime itself as necessarily revealed by the testimony of those who saw the body and by the physician who made the required post-mortem examination was of such an atrocious character that no mere photographs could add anything to the feelings which would naturally be aroused in the breast of any civilized human being, against its perpetrator. These photographs did not convict the defendant of this crime. His conviction was based on other evidence, ample and convincing. The second assignment is overruled.

The third assignment is based on the refusal of the court below to grant a new trial. It is overruled.

The trial was fair, the verdict just, and the sentence appropriate.

The judgment is affirmed. The record is remitted to the court below so that the sentence may be executed.